1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUWAN MARCHE WILLIAMS, JR., | NO. _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| KING COUNTY, a municipality; TODD CLARK, in his personal capacity; KING COUNTY SCHOOL DISTRICT; LARRY NYLAND, in his personal capacity; KENT SCHOOL DISTRICT, a municipal corporation; CALVIN WATTS, in his personal capacity; JOHN and JANE DOES 1-20, in their personal capacities, | |
| Defendants. | |

## I.  INTRODUCTION

1.      Plaintiff Juwan Williams, now age 20, was detained by Defendant King County from September 3, 2015, to November 27, 2016, awaiting trial.  Mr. Williams was ages 16 and 17—a minor—at the time.

2.      Throughout his detention, staffers at the King County employees routinely placed Juwan in solitary confinement, pursuant to King County's policies and established practices. Juwan spent 325 days in complete isolation.

COMPLAINT - 1

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

3.     During this time Juwan's mental health noticeably deteriorated.   He became extremely depressed and even suicidal.   Today, as a result of the 325 days in spent in isolation as a minor, Juwan suffers from serious mental illnesses.   He has been permanently injured.

4.     This lawsuit challenges King County's pervasive policy and practice of holding children who have not been convicted of any crime in long-term solitary confinement ("isolation" or "solitary confinement") at King County's Maleng Regional Justice Center ("RJC") and the King County Jail, and of denying children held at the RJC an adequate education.[1]

5.     The United Nations Rules for the Protection of Juveniles Deprived of their Liberty ("U.N. Rules") establish minimum standards for the protection of juveniles in correctional facilities. The U.N. Rules were supported by the United States of America, approved by the General Assembly in December 1990, and specifically prohibit the solitary confinement of juvenile offenders.  Section 67 of the U.N. Rules states:

> All disciplinary measures constituting cruel, inhuman or degrading treatment shall be strictly prohibited, including corporal punishment, placement in a dark cell, closed or solitary confinement or any other punishment that may compromise the physical or mental health of the juvenile concerned.

6.     In 2012, the American Academy of Child and Adolescent Psychiatry issued a policy statement:

> The American Academy of Child and Adolescent Psychiatry concurs with the UN position and opposes the use of solitary confinement in correctional facilities for juveniles. In addition, any youth that is confined for more than 24 hours must be evaluated by a mental health professional, such as a child and adolescent psychiatrist when one is available.

7.     The National Commission of Correctional Health Care ("NCCHC") is "an independent non-profit organization dedicated to improving the quality of health care services and

---

[1] In July of 2018 King County and the Kent School District agreed to change the policies and established practices identified in this suit  *C.S. v. King County*, No. 17-1560 (W.D. Wash.), Dkt. # 24-1.  The settlement in *C.S.* also compensated the four plaintiffs in that case.  *Id.*  It did not, however, "impact any claim that any other person may have against either of the defendants" arising from the same policies, established practices, acts, or omissions at issue in that case.  *Id.*, Dkt. # 24, at 2 n.2.

COMPLAINT - 2

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

assisting correctional facilities in providing effective and efficient care" that "promulgates specific standards relative to medical care." *Zikianda v. Cty. of Albany*, No. 12-1194, 2013 WL 936446, at *1 (N.D.N.Y. Mar. 8, 2013).  In 2016 the NCCHC issued a Position Statement: "Juveniles, mentally ill individuals, and pregnant women should be excluded from solitary confinement of any duration."  A copy of the 2016 NCCHC Position Statement is attached to and made a part of this Complaint as Exhibit 1.

8.      Noting research documenting how solitary confinement can contribute to mental illness and self-harm, the Obama administration banned solitary confinement for juvenile offenders in the federal prison system in 2016.  President Barack Obama, *Why We Must Rethink Solitary Confinement*, WASHINGTON POST, Jan. 25, 2016.

9.      In January of 2016, the U.S. Justice Department issued a Final Report on the Use of Restrictive Housing, concluding that "[j]uveniles should not be placed in restrictive housing."

10.     On January 3, 2017, the United States Department of Justice filed a statement of interest addressing the harmful effects of subjecting juvenile offenders to solitary confinement in a case pending in the United States District Court for the Northern District of New York, entitled V.W. v. Conway, No. 16-1150 (N.D.N.Y.), a class action brought by six juveniles and their parents and natural guardians to challenge the placement of youth in solitary confinement in the Onondaga County Justice Center in Syracuse, New York.  The statement of interest filed by the United States Department of Justice advances the official position of the United States of America that juveniles should not be placed in restrictive housing, including solitary confinement.  This statement of interest provides that, accordingly, the Federal Bureau of Prisons has ended the practice of using restrictive housing for juveniles. The statement of interest also explains that, consistent with scientific consensus from many child psychology experts and researchers that solitary confinement should be banned for juveniles, courts have recognized the developmental

COMPLAINT - 3

vulnerability of juvenile brains and the irreversible damage that solitary confinement can inflict on adolescents. A copy of the United States Department of Justice's Statement of Interest is attached to and made a part of this Complaint as Exhibit 2.

11.     In federal litigation involving the constitutionality of punitive solitary confinement for juveniles, federal courts have uniformly prohibited the practice.  *See, e.g., United States. v. Hinds Cnty.*, No. 16-489 (S.D. Miss. Jul. 19, 2016), ECF No. 8-1 at 37-38; *United States v. Ohio*, No. 04-1206 (S.D. Ohio May 21, 2014), ECF No. 148 at 2; *United States v. Leflore Cnty.*, No. 15-00059 (N.D. Miss. May 13, 2015), ECF No. 3-1 at 10-12; *United States v. City of New York*, No. 11-5845 (S.D.N.Y. Jul. 1, 2015, ECF No. 209-1; *Doe v. Hommrich*, No. 16-0799, (M.D. Tenn. Mar. 22, 2017), ECF No. 115; *Turner v. Palmer*, 84 F.Supp.3d 880, 883 (S.D. Iowa 2015).

12.     Despite an obvious and agreed upon consensus in the corrections field that isolation places children at risk of serious emotional, psychological, and physical harm, King County had—during Juwan's pretrial detention—embraced its use at the RJC and King County Jail, regularly confining children alone in miniscule, barren cells for 23 or 24 hours a day for weeks or months on end.

13.     Defendants' actions and inactions were a violation of clearly established statutory or constitutional rights of which a reasonable person would have known.

14.     These children, many of whom already had mental illnesses, had little to nothing to do in their isolation cells: no meaningful human interaction, little to no education or programming, no music or television, and very few reading materials.

15.     Even when allowed out of their cells, children in isolation were alone in the day room.  Any "recreation" the children in in isolation received took place alone in an empty, concrete pen.

COMPLAINT - 4

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

16.     It is well-known that isolating children so that they have minimal meaningful social contact causes trauma, depression, anxiety, and psychosis, increases the risk of suicide and self-harm, and permanently interferes with a child's psychological and social development.

17.     For children like Juwan, with mental illnesses or disabilities, the risk of harm from isolation is even greater because those illnesses or disabilities worsen.

18.     Compounding the profound consequences of King County's wanton use of isolation, King County, its School District, and the Kent School District were also denying all children held at King County Jail and the RJC basic educational services and programming.

19.     King County, its School District, and the Kent School District gave children in isolation only a few minutes of face-to-face instruction, through a small opening in the door. They were then left to complete paper worksheets alone in their cells.

20.     The vast majority of children injured by King County's policies and established practices were children of color like Juwan, who is African American.  Of the children King County sent to the RJC in 2016, 86% were children of color.  In 2015, every child King County incarcerated at the RJC was a child of color.

21.      By maintaining a policy and established practice of detaining children in isolation for long periods of time and refusing to provide them an adequate education, King County, its School District, and the Kent School District violated the rights guaranteed to Juwan by the Fourteenth Amendment to the U.S. Constitution, the Washington State Constitution, the Individuals with Disabilities Education Act ("IDEA"), and Washington's Law Against Discrimination.

22.     Additionally, Defendants' acts and omissions in this regard to the care and custody of Juwan were negligent and grossly negligent.

COMPLAINT - 5

## II.   PARTIES

23.     Plaintiff Juwan Marche Williams, Jr., is a citizen of the State of Washington who was sixteen and seventeen years of age between September 3, 2015, and November 27, 2016, during which time he detained 325 days in isolation.

24.     Defendant Todd Clark is King County's Correction's Major.   He had at all material times overall supervisory authority of King County's employees.   He also established and maintained King County's policies and established practices.   He was acting under color of law and is sued in his personal capacity.

25.     Defendant King County is a county within the State of Washington and is a municipality.  Defendant King County owns and operates the King County Jail and the RJC and is responsible for the unlawful policies, practices, and customs challenged by Plaintiff.   King County is responsible for the actions or inactions described herein committed by any jail staff person.   King County failed to properly train or supervise jail staff and failed to properly promulgate policies and standards to ensure that the RJC and the King County Jail are operated in a lawful manner.   The actions or inactions described herein committed by King County or its staff was taken under color of state law.

26.     Defendant Kent School District is a municipal corporation within the State of Washington and is obligated to provide an education to youth under the age of 18 who are incarcerated in the RJC.  Kent School District failed in those duties.  It assigned a single instructor for all children housed in three different housing pods. Children in the general population wings typically received no more than an hour a day of class instruction, and children in isolation received at most a few minutes of individual instruction through a closed and locked steel cell door.  King County and Kent School District provided no special educational services and did not comply with existing Individual Education Programs, in violation of federal and state laws.  The

COMPLAINT - 6

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

actions or inactions described herein committed by Kent School District or its staff was taken under color of state law.

27.     Defendant Calvin Watts is the Kent School District Superintendent.  He had at all material times overall supervisory authority of the Kent School District's employees.  He also established and maintained the Kent School District's policies and established practices.  He was acting under color of law and is sued in his personal capacity.

28.     Defendant King County School District is a municipal corporation within the State of Washington and is obligated to provide an education to youth under the age of 18 who are incarcerated in the King County Jail.  King County School District failed in those duties.  It provided no special educational services and did not comply with existing Individual Education Programs, in violation of federal and state laws.  The actions or inactions described herein committed by the King County School District or its staff was taken under color of state law.

29.     Defendant Larry Nyland was the King County School District Superintendent at the time of Juwan's incarceration as a minor.  He had at all material times overall supervisory authority of the King County School District's employees.  He also established and maintained the Kent School District's policies and established practices.  He was acting under color of law and is sued in his personal capacity.

30.     Defendants John and Jane Does 1-10 are unidentified employees of the King County and Kent School Districts who either (1) failed to provide adequate educational services; (2) maintained, promulgated, or ratified the policies and established customs at issue; and/or (3) failed to supervise and/or train other School District employees.  John and Jane Does 1-10 were at all material times acting under color of law.

31.     Defendants John and Jane Does 10-20 are unidentified employees of the King County who either (1) placed Plaintiff in isolation between 2015 and 2016; (2) maintained,

COMPLAINT - 7

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

promulgated, or ratified the policies and established customs at issue; and/or (3) failed to supervise and/or train other King County employees.   John and Jane Does 10-20 were at all material times acting under color of law.

### III.   FACTS

**A.   KING COUNTY'S POLICIES AND ESTABLISHED PRACTICES**

32.     King County operates two jails, designed to hold adults, in which Juwan was housed during 2015 and 2016: RJC and the King County Jail.

33.     Located in Kent, Washington, the RJC is a courthouse complex and correctional facility.   The jail portion of the RJC houses pretrial detainees and generally has a population of between 830 and 950 adults.

34.     The King County Jail is in downtown Seattle and houses more than 2,100 adults every night.

35.     Under Washington law, any child a prosecutor charges with one of a list of a certain crimes who is 16 or 17 at the time of the alleged offense is automatically referred to the adult criminal justice system for the adjudication of the criminal charge.

36.     By policy and practice, King County generally holds all children charged as adults in King County at the RJC pending resolution of their criminal cases. This has been King County's policy and practice for a number of years.

37.     On occasion, a child charged as an adult may be held at the King County Jail.

38.     Typically, King County holds 15 to 25 children at the RJC at any given time. These children have not been convicted, but are detained at the RJC awaiting trial.

39.     Depending on the nature of the charged offense, the County may detain a child in jail at the RJC for months or even years.

COMPLAINT - 8

40.     Nonetheless, at the time Juwan was in pretrial detention, King County held the children at the RJC in isolation, alone in their cells, for days, weeks, or months on end.

41.     Generally, the children held at the RJC and their families do not have the financial means to afford bail that would allow the children to leave jail pending the dispositions of their cases.  This was Juwan's situation.

42.     The vast majority of children that King County charges as adults are children of color.

43.     In 2015, every child charged as an adult in King County was a child of color.

44.     In 2016, 86% of the children charged as adults in King County were children of color.

45.     Juwan, as an African American, is a child of color.

46.     The vast majority of children King County held in isolation and failed to properly educate in 2015 and 2016 were minorities of color.

47.     The vast majority of the children come from families experiencing severe poverty, as Juwan's family did.

48.     Many have serious mental health issues, as Juwan does.

49.     Many have suffered physical, emotional or sexual abuse in their pasts, as Juwan has.

50.     Many come from families that have suffered serious disruptions and social dislocation, as Juwan's had.

51.     The Children's Isolation Unit King County operates at the RJC consists of a few cells that are small and stark.

52.     A typical cell is small and contains a stainless steel toilet, a sink, a mattress, and a overhead fluorescent light. The cell floors and walls are concrete. The cells have no windows to

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

the outside and natural light does not enter them. The cell door is solid with narrow Plexiglas windows. A "pass through" slot allows correctional officers to pass meals to the youth locked inside. The cells have no phones, radios, or televisions.

53.     Children held in isolation spent *at least* 23 hours a day locked in their cells. Often, King County failed to allow children out of their cells for even an hour a day.  On many occasions, children have been held for 47 or 48 hours at a time and even more without being allowed out of their cells.   Per this policy, *Juwan was let out of his cell a mere 2 hours a week.*

54.     When children were allowed out of their cells, they were alone in the day room that adjoins their cell.

55.     King County isolated children in order to punish them for minor misbehaviors. King County refers to this type of isolation as "disciplinary housing."   These decisions were often arbitrary and based on minor misbehaviors that are common for many teenagers, and common particularly for children who have been confined alone in a cell with nothing to do for days or weeks on end.

56.     Juwan was, for example, placed in isolation for failing to meet dress code rules, mouthing off to correctional officers, and getting in minor physical altercations.

57.     Teenagers routinely try to bring the conditions of their confinement as described herein to attention of the Sheriff's Office, but the Sheriff's Office has systematically ignored those complaints and even have gone so far as to stonewall the children who try to complain. Deputies routinely deny juveniles grievance forms—or give them the forms only to later dump them in the trash. The few juveniles who have been able to get a hold of grievance forms to file complaints have complained to jail officials about the conditions of their disciplinary isolation. They wrote about how solitary confinement was harming them and how it is seriously harmful to any juvenile. Nothing changed. Some juveniles objected to their sanctions or administrative

COMPLAINT - 10

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

segregation status writing that solitary confinement is particularly damaging to them because they are juveniles with mental illnesses or disabilities. These juveniles asked to be released from solitary, but jail officials did not respond or denied their requests.

58.     Per King County's established practices at the time, not addressing a staff member by his proper title, annoying the staff, being loud, or violating the dress code would result in weeks or months of isolation.

59.     Once a child is placed in isolation, as Juwan was, correctional officers regularly take all or some of the child's "out of cell time" for alleged transgressions of RJC rules—meaning that children would remain alone in their cells for days at a time without being allowed out.

60.     King County also held children in isolation for reasons other than punishment.

61.     King County held children in isolation when there was a concern that a particular child may not be able to live alongside other children held at the RJC, such as was the concern for Juwan at times during his pretrial incarceration.

62.     This isolation is identical to the "disciplinary housing" isolation that King County imposed on many children.  It entails at least 23 hours a day of isolation in a cell alone with no meaningful social interaction, environmental stimulation, or human contact.

63.     Children, like Juwan, have been held in isolation for months because King County has not provided them with any alternative housing option that does not require isolation.

64.     King County had other locations where it could house children that would not require them to be alone.  Nonetheless, until July of 2018 King County refused to place children in more appropriate housing.

65.     Children locked in King County's Children's Isolation Unit had virtually no meaningful human interaction.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

66. "Recreation" consisted of being placed alone in a small, barren box with a concrete floor, concrete walls and little else.

67. Many children held in isolation were handcuffed and escorted by two correctional officers whenever they are visited by family or friends, further humiliating the child in front of their loved ones. This was done to Juwan on numerous occasions.

68. Children in the isolation cells cannot participate in any group recreational activities, such as basketball, cards or chess.

69. While in isolation, children were not allowed to order anything from the commissary. As a result, many children held in isolation reported being hungry. This happened to Juwan on numerous occasions.

70. Additionally, children in isolation were regularly denied access to reading or writing materials or other items that would help them to pass the time while locked in their cells by themselves.

71. They are their meals alone in their cells.

72. They received no meaningful education while in isolation.

73. Their time out was the only time when they could go outside to the recreation yard, use the telephone, watch television, or take a shower.

74. They were alone, even in the recreation yard.

75. King County had severely restricted the times when parents and other family members may visit children held at the RJC to only a few hours a week.

76. King County refused to allow parents to visit their children if they could not get to the RJC because of work, family commitments, or lack of transportation during the few hours King County permitted visits.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

77.     While children may have access to a telephone, King County charged families a significant amount for use of the telephone. Many families do not have the money for frequent phone calls.  Consequently, children in isolation were forced to go days and weeks without any contact with family.

78.     Children's requests for help and written grievances were routinely and regularly ignored by staff.

79.     Nearly every aspect of living in King County's Children's Isolation Unit was dehumanizing.

80.     Depending on the circumstances, children would be shackled, pepper sprayed, or strip searched by jail staff.  This happened to Juwan on numerous occasions.

81.     Staff members regularly used profanities, mocked the children, and treated them with disrespect. This happened to Juwan on numerous occasions.

82.     Children reported being sworn at, called "stupid," and told to "shut up" regularly by King County staff.  This happened to Juwan on numerous occasions.

83.     At the time of Juwan's pretrial detention, King County had not provided the correctional officers who supervise the children at the RJC or King County Jail with any training on how to manage children or teenagers (unlike the staff at the juvenile detention facility, who have been provided this training).

84.      At the time of Juwan's pretrial detention, neither King County nor the Kent School District had promulgated appropriate policies and procedures that govern the management and education of children at the RJC or King County Jail.

85.     At the time of Juwan's pretrial detention, King County and its supervisors did not properly supervised the correctional officers who watch over the children at the RJC or the King

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

County Jail in order to ensure that they did not antagonize children or drive them to commit misbehaviors that lead to their isolation.

86.    At the time of Juwan's pretrial detention, King County had not put in place appropriate procedural safeguards to protect children with mental health disorders from being isolated or to ensure that they get the attention and support that they need in order to avoid behaviors that might lead to their isolation.

87.    At the time of Juwan's pretrial detention, King County allowed correctional officers to take children's out of cell time arbitrarily and without justification.  This occurred to Juwan on numerous occasions.

88.    At the time of Juwan's pretrial detention, King County approved of and ratified the use of long-term isolation against children.

89.    By policy, all children held at the King County Jail in 2015 and 2016 were held in what King County calls "single cell housing."  "Single cell housing" is isolation, in that children are locked alone in a cell for long periods of time.

90.    Children held at the King County Jail were held in a unit designed to provide mental health interventions for adult inmates in crisis.  These children were held alone in their cells for long periods of time without being allowed out.

91.    At the time of Juwan's pretrial detention, King County had a practice of locking down youth in the general population, Nora West unit, for at least 21 hours per day.  Each cell in Nora West unit holds a single child. These children were therefore held in isolation for 21 hours a day.

92.    Due to King County's policies and practices at the time of Juwan's pretrial detention, every child held at the RJC has been isolated.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

93.     Juwan, as a minor held in isolation, was subject to the above policies and established practices for at least 325 days.

**B.     EFFECTS OF KING COUNTY'S POLICIES**

94.     Potentially dangerous for anyone, solitary confinement is especially harmful for children, who are still developing physically, psychologically, and socially.  This is well known in the corrections field, and was known by King County and its employees in 2015 and 2016.

95.     King County has a special relationship with the children under its care.

96.     As a result of this special relationship, King County has a duty to protect and maintain the health, safety, and welfare of all the children in its custody.

97.     Nonetheless, King County's use of isolation inflicted serious harm on children and exposed them to a substantial risk of serious harm.  King County and its employees were well aware of this fact.

98.     King County's use of isolation caused Juwan to suffer from suicidal ideation and intent, anxiety, depressive symptoms, post-traumatic symptoms, and worsening behavior.

99.     King County knew of the serious harm caused by its policies and established practices described herein, but refused to address the issue during Juwan's pretrial incarceration.

100.    Juwan and other children reported to King County employees feeling "crazy," depressed, and anxious from the lack of stimulation caused by isolation and the lack of contact with others.

101.    Juwan and other children reported to King County employees that they were unable to sleep at night because of the anxiety and depression caused by being isolated for days at a time.

COMPLAINT - 15

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

102.    Juwan and other children reported to King County employees that their sleep is also troubled by the screams of adult inmates that they can hear through their vents throughout the night—some wonder whether those voices are actually real.

103.    Juwan and other children reported to King County employees that they felt they "are not going to make it" because of the uncertainty about how long they will be held alone in their cells.

104.    Juwan and other children reported to King County employees about talking to themselves and having physical symptoms, like stomach and headaches, related to the stress and boredom of long-term isolation.

105.    Juwan and other children threatened suicide as a consequence of being isolated for so long.

106.    Children reported to King County employees that because of the stress caused by long-time isolation, they agreed to accept plea deals in order to get out of isolation and into a different facility that does not isolate children.

107.    The parents of children isolated at the RJC at the time of Juwan's pretrial detention have reported to King County employees that the long term isolation has affected their children's moods, emotions, and personalities.   Again, the negative effects of isolation were well-known to King County.

108.    Children are especially susceptible to serious psychological harm when they are isolated from other people because they are still developing psychologically, neurologically, and socially.

109.    Children in isolation face a *significant* risk of serious mental harm.

110.    Isolation causes, perpetuates, and worsens mental health disorders, including but not limited to post-traumatic stress disorders, psychosis, anxiety disorders, major depression,

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

hypervigilence, abnormal aggression, agitation, suicidal ideation, suicidal intent, self-mutilation, and suicidal behavior.  As a result of his isolation, Juwan has experienced, and will continue to experience, these symptoms.

111.    Isolation can lead to chronic conditions like depression, which, in teenagers, can manifest as anger or as self-harm.

112.    Research shows that almost all suicides within juvenile correctional facilities occur when the child is in some type of isolation.

113.    Isolation can have lingering effects. Children like Juwan who experience depression and anxiety in their teenage years as a result of isolation are at a higher risk of presenting with these diagnoses again.

114.    Isolating children can also bring on paranoia, anger, and mistrust of adults or authority figures.  Unlikely to trust others, children emerging from isolation have trouble forming the therapeutic relationships necessary to address the mental health concerns resulting from solitary confinement.   Juan has experienced and will likely continue to experience these symptoms.

115.    Medical research on adolescent brains explains why children are more vulnerable to the harms caused by isolation. In the adolescent brain, the connections between the frontal lobe and the mid-brain have not fully developed. The severe physical or psychological trauma brought on by isolation can cause permanent changes in the brain and increase the risk of developing permanent psychiatric conditions.    This has happened to Juwan.

116.    The risk of harm from isolation is made worse by the disproportionately high incidence of preexisting trauma and mental health disorders among children in the criminal justice system. Research shows that over 60% of the youth in correctional settings have an underlying major mental illness. Stress from isolation can compound past trauma and

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1  exacerbate   mental illnesses and disabilities. Trauma from social isolation will be more long-

2  lasting for those   with mental illnesses or disabilities than for those without.

3      117.    Isolating children is also counterproductive, because it does not reduce future

4  misbehavior.   In fact, psychological research has shown the opposite: placing children in

5  solitary   confinement can exacerbate the agitation and behavior that led to discipline in the first

6  place.  This what happened to Juwan during his pretrial incarceration.

7      118.    In Ohio, the state Department of Youth Services' ("DYS") analysis of five years

8  of data showed that as the rate of solitary confinement increased (so did acts of violence) and

9  that when DYS cut its use of isolation for children it saw a dramatic reduction in the level of

10  violence within its juvenile facilities. Based upon this analysis, Ohio DYS concluded that

11  isolation "does not prevent violence or reduce assaults on staff and youths; instead . . . it

12  actually   increases violence."

13      119.    Because it is harmful and counterproductive, the American Medical Association,

14  the American Academy of Child and Adolescent Psychiatry, the American Correctional

15  Association, and the National Commission on Correctional Health Care have all called for the

16  abolition of isolation against children.

17      120.    The National Commission on Correctional Health Care, for example, issued a

18  statement articulating their position that children should not be placed in solitary confinement for

19  any duration and highlighted children' particular vulnerability to adverse reactions from isolation.

20      121.    The American Correctional Association has issued draft standards that prohibit the

21  use of long-term isolation against children.

22      122.    Similarly, organizations dedicated to the welfare of children, such as the Children

23  Detention Alternatives Initiative and the Performance-based Standards Learning Institute, have

24  also adopted standards that call for the elimination of isolation for children.

25

COMPLAINT - 18

123.   The World Health Organization, the United Nations, and other international bodies have also recognized that isolation is harmful to a child's psychological well-being and cognitive development and must be ended.

124.   The U.N. has repeatedly condemned the isolation of children, calling it torture.

125.   Because of the undisputed scientific evidence, the United States Justice Department ("DOJ") recommended the abolition of the isolation for children.

126.   Based on the DOJ recommendation, the scientific consensus, and the appreciation of the harms isolation inflicts on children, the use of solitary confinement against children was banned in all federal prisons.

127.   Similarly, many states, counties and localities have banned the use of isolation against children.

128.   King County's practice of isolating children is out of step with the science and generally accepted correctional standards because it is harmful to children and counterproductive.

129.   And, again, King County knows it now and knew it then.  It's obvious, and has been for almost fifty years. *See, e.g., Lollis v. New York State Dep't of Soc. Servs.*, 322 F. Supp. 473, 483 (S.D.N.Y. 1970) ("Youngsters are in general more vulnerable to emotional pressures than mature adults; isolation is a condition of extraordinarily severe psychic stress; the resultant impact on the mental health of the individual exposed to such stress will always be serious, and can occasionally be disastrous.") (quotation omitted); U.S. Department of Justice, Report of the Attorney General's National Task Force on Children Exposed to Violence, 178 (2012) ("Nowhere is the damaging impact of incarceration on vulnerable children more obvious than when it involves solitary confinement.").

C.   **MENTAL HEALTH EVALUATIONS, MONITORING, AND TREATMENT**

130.   Isolation is particularly awful for children who suffer from mental health disorders.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

131.    During Juwan's pretrial incarceration Children in isolation did not receive mental health evaluations upon being placed in isolation cells or at any time during their confinement in them.

132.    Children housed in King County's children isolation unit were not monitored by any qualified mental health professional.

133.    No counselor, therapist, or mental health professional regularly or routinely inquired about the mental health or wellbeing of the children held in King County's children isolation unit.

134.    King County did not evaluate how isolating children will affect their mental health or how it might injure them.

135.    King County did not notify a child's parents when he or she was placed in isolation, explain the reasons for that isolation, or explain when the child will be released and under what conditions.

136.    At the time of Juwan's pretrial detention, King County did not provide the children at the RJC or the King County Jail with counseling, mental health support, specialized staff, or other interventions that would reduce or eliminate the behaviors that lead to children being isolated and that often result in long-term isolation.

137.    King County's use of isolation has physically and psychologically injured many children and posed a substantial risk of serious harm to all children held at the RJC in 2015 and 2016.

138.    Juwan, as a minor held in isolation, was subject to the above policies and established practices for at least 325 days.

139.    Not only is it harmful to deprive a child of meaningful social interaction or mental stimulation, it also is counterproductive to the goals of ensuring safety, security, and good order.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

Research shows that isolating children results in increased agitation and an increased risk of misbehavior, which occurred with Juwan. Facilities that have reduced their reliance on disciplinary isolation and instead adopted more appropriate techniques for managing juveniles have seen reductions in rates of violence and misbehavior. Most of these facilities allow for short-term separation—measured in hours, not days, weeks, or months—as a last resort when other options fail to diffuse situations which pose an acute risk of harm to the juvenile or others.

**D.    DELIBERATE INDIFFERENCE**

140.    King County has acknowledged that isolation harms children and has been informed about the injuries it is causing children by isolating them.

141.    One of King County's policies in place during 2015 and 2016 regarding the use of isolation at the RJC states that an "Inmate-patient[] under the age of 19" is a "contraindication" for the use of isolation housing.

142.    King County also operates a juvenile detention facility on First Hill in Seattle that houses children under the age of 18. By policy and practice, King County does not utilize long-term isolation against children held at the juvenile detention facility, because it is aware of the negative effects. Unlike at the RJC, at the juvenile detention facility, King County does not utilize isolation as a form of discipline.

143.    Multiple stakeholders, family members, children and other concerned individuals have asked King County to treat the children held at the RJC as it treats the children held at the juvenile detention center by not isolating them and by providing them with appropriate housing options and additional programming opportunities. During Juwan's pretrial incarceration, King County had refused to make any changes to its policies and established practices, as described above.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1

2 **E.    CONSTITUTIONALLY INADEQUATE EDUCATION**

3      144.    Children detained by King County have a constitutional right to an appropriate and

4 adequate education.

5      145.    King County and the Kent School District have an obligation to ensure that all of

6 the children under its care receive adequate educational services, including appropriate special

7 educational services.

8      146.    Only a single Kent School District instructor is provided to all the children at the

9 RJC during Juwan's pretrial detention, however.  This one instructor provided services to children

10 housed in three separate housing pods.

11      147.    Because the instructor did not see all of the children in each pod simultaneously,

12 he or she severely limited his or her teaching to be able to travel between all of the pods, meet

13 with the groups, and the individuals in isolation all within the 7 hour work day.

14      148.    Some days the instructor did not come at all, without explanation or warning.

15      149.    In the two general housing pods, the instructor provided groups of children no

16 more than an hour of instruction a day.

17      150.    Generally, the hour involved 10 or 20 minutes of discussion on only a single topic,

18 followed by individual, solitary work by the children on work sheets.

19      151.    Often the work sheets were too difficult or too easy for the individual child.

20      152.    All children, regardless of age, grade level or comprehension, received the same

21 assignments and work packets.

22      153.    Children were not tested and received no evaluations of the work that they

23 completed.

24

25

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

154.     Children at the RJC received no educational services during the summer, holiday breaks, or on weekends.

155.     The federal Individuals with Disabilities in Education Act ("IDEA") requires that eligible students receive special education services.

156.     King County and the Kent School District have an obligation to ensure that children under their care receive special educational services for which they are eligible.

157.     Many of the children held at the RJC during Juwan's pretrial detention—including Juwan—were eligible to receive special education services.

158.     Many of them—including Juwan—had existing Individual Educational Plans ("IEPs") that were created by their home school districts before they were incarcerated.

159.     IEPs are plans that all schools must create in collaboration with eligible students, their parents, and school staff to address the special educational needs of students living with disabilities.

160.     During Juwan's pretrial detention King County and the Kent School District neither provided appropriate special educational services to the children at the RJC, nor ensured that they received them.

161.     The services provided to children in isolation were even more constitutionally inadequate.

162.     Children in isolation received even fewer educational resources and less face-to-face time with an instructor than students in the general population pods.

163.     At most, children in isolation received a few minutes of time per day with an instructor.  They were then left to do paper worksheets alone in their cells.

164.     Even the few minutes of face-to-face instruction occurred through the closed and locked steel cell door.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

165.     King County and the Kent School District prohibited the children in isolation from participating in limited group instruction given to children in the general population pods.

166.     During Juwan's pretrial detention it was King County and the Kent School District's policy and practice to severely limit educational services solely because a child was placed in isolation.

167.     King County and the Kent School District did not give the children in isolation notice or an opportunity to be heard before it denied them the limited educational services provided to those in general population or at any point thereafter.

168.     King County and the Kent School District refused to provide notice or an opportunity to be heard, even though the reason for isolating a child may have had nothing to do with his or her participation in educational activities.

169.     Neither King County nor the Kent School District evaluated how isolating children might impact their schooling or academic progress.

170.     Neither King County nor the Kent School District allowed a child or a parent to explain why isolation and the corresponding denial of educational services would harm the child.

171.     Children received no notice when placed in isolation that it would result in a denial of educational instruction or that they would be cut off from their regular class work.

172.     Children placed in isolation received no hearing to challenge the denial of educational services as a result of their placement in isolation.

173.     There was no process for reviewing the denial of educational services.

174.     Neither King County nor the Kent School District made any effort to inform parents about their children or about the educational services to which their children are entitled.

175.     Juwan, as a minor held in isolation, was subject to the above policies and established practices for at least 325 days.  For example:

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

- He received only a few minutes of face-to-fact instruction Monday through Friday.

- The worksheets that he was provided were not appropriate for his educational level or his particular educational needs.

- He received no feedback or evaluations of his work.

- He was not tested on his competency or understanding of the subject matter.

- He has received special education services in the past, was eligible to receive special educational services and was in need of such services while detained, but did not receive special education services at all.

- He has an IEP or is in need of such a plan, but was not provided any special education services.

- Juwan was not provided notice that he would lose educational services as a result of

- being placed in isolation and did not receive a hearing to contest the loss of educational services as a result of being placed in isolation.

### IV.    JURISDICTION AND VENUE

176.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the IDEA, 20 U.S.C. §§ 1400-1482. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction over the state law claims presented in this action pursuant to 28 U.S.C. § 1367.

177.    This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988, 20 U.S.C. § 1415, and RCW 49.60.030(2).

178.    Venue is proper in the Western District of Washington pursuant to 28 U.S.C.  § 1391(b)(1) and (b)(2). King County is located in the Western District of Washington, and the events and omissions giving rise to the claims in this action occurred in this district.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

## V.   CLAIMS

179.   **FIRST CLAIM – 42 U.S.C. § 1983**:  By (1) isolating children in the conditions described above, and (2) denying children held in isolation an appropriate and adequate education without due process of law, King County and its policymakers, in their individual capacities, have acted under color of state law and have violated Juwan's rights under the Fourteenth Amendment of the United States Constitution, which are actionable pursuant to 42 U.S.C.   § 1983.

180.   **SECOND CLAIM – Article I of Washington's Constitution:**   By isolating children in the conditions described above, King County has acted under color of state law and has violated Juwan's rights under Article I, section 14 of Washington's Constitution.

181.   **THIRD CLAIM – Article IX of Washington's Constitution:** By denying all children an appropriate and adequate education, King County and the Kent School District have acted under color of state law and violated Juwan's rights guaranteed by Article IX of the Washington Constitution.

182.   **FOURTH   CLAIM – Negligence:** By isolating children and denying an appropriate and adequate education in the manner described above, Defendants have violated their duty to protect and maintain Juwan's health, safety, and welfare and was negligent.

183.   **FIFTH CLAIM – Gross Negligence:** By isolating children and denying an appropriate and adequate education in the manner described above, Defendants have violated their duty to protect and maintain Juwan's health, safety, and welfare and was grossly negligent.

184.   **SIXTH CLAIM – 20 U.S.C. §§ 1400 et seq.**: By denying special educational services and resources to children held at the RJC, King County acted under color of state law and has violated Juwan's under the IDEA, 20 U.S.C. §§ 1400 et seq.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

185.  **SEVENTH CLAIM – Washington's Law Against Discrimination:** By denying children who are predominantly children of color an appropriate and adequate education, Defendants have acted under color of state law and their actions or inactions have had a disparate impact upon children of color, which has violated Juwan's rights under Washington's Law Against Discrimination, RCW 49.60.030 and RCW 49.60.400.

## VI.  JURY DEMAND

186.  Plaintiff hereby demands a trial by jury.

## VII.  AMENDMENTS

187.  Plaintiff hereby reserves the right to amend this Compliant.

## VIII.  RELIEF REQUESTED

188.  Adjudge and declare that the actions, customs, conditions, policies, and practices described in this Complaint violated Juwan's rights under the federal and state constitutions and other applicable laws.

189.  Compensatory and other damages.

190.  Costs, including reasonable attorneys' fees.

191.  Such other and further relief as justice may require.

Respectfully submitted this 29th day of October, 2019.

s/Ryan D. Dreveskracht
_____
Ryan D. Dreveskracht, WSBA No. 42593
Galanda Broadman PLLC
8606 35th Ave. NE, Ste. L1
P.O. Box 15146
Seattle, WA  98115
P:(206) 557-7509
F:(206) 299-7690
Attorney for Plaintiff

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509